## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### Fayetteville Division

| | |
|---|---|
| In re: | Chapter 7 |
| Veg Liquidation, Inc. f/k/a Allens, Inc. and All Veg, LLC, | Case No. 5:13-bk-73597 (BTB) and 5:13-bk-73598 (BTB) |
| Debtors. | Jointly Administered Under Case No. 5:13-bk-73597 (BTB) |
| R. RAY FULMER, CHAPTER 7 TRUSTEE | |
| Plaintiff, | A.P. No. 5:14-ap-07103-BTB |
| v. | |
| GREENBERG TRAURIG, LLP, | |
| Defendant. | |

### MOTION TO DISMISS ADVERSARY COMPLAINT

Defendant Greenberg Traurig, LLP ("GT" or "Defendant"), by and through its attorneys, files this Motion To Dismiss Adversary Complaint (the "Motion") pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12 of the Federal Rules of Civil Procedure requesting the Court enter an order dismissing the Adversary Complaint filed by R. Ray Fulmer (the "Trustee"), Chapter 7 Trustee for Veg Liquidation, Inc. and All Veg LLC (together, the "Debtors"), in this matter, as follows:

1. The Trustee's adversary complaint should be dismissed because the Trustee is without standing to bring the claims asserted therein;

2. The Trustee's adversary complaint should be dismissed because it fails to state a claim upon which relief can be granted against GT; and

3. The Trustee's adversary complaint should be dismissed because it is precluded by the PACA Order (Doc. # 255) entered by this Court on November 27, 2013.

This Motion is made and based on the points and authorities listed herein, the pleadings, papers, and other records on file with the clerk of the above-captioned Court filed contemporaneously herewith, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

105006-001/2549294_3.DOCX

# I.
# __INTRODUCTION__

The Trustee filed his Adversary Complaint ("Complaint") on November 24, 2014, asserting three causes of action against GT. The Trustee seeks to recover from GT "all assets impressed with the PACA trust for the benefit of all of the Debtors' unpaid suppliers of Produce" and claims damages in an amount of $1,419,989.43, as a result of unpaid claims of suppliers of produce to the Debtors.[1]   As authority for his purported claims, the Trustee relies on the Perishable Agricultural Commodities Act, as amended, 7 U.S.C. § 499e(c)(2) ("PACA"). Although the Trustee's pleading implicitly recognizes that the claimed "PACA Trust Assets" do not constitute property of the Estate, he nevertheless seeks to recover a money judgment for the benefit of the "Produce Suppliers" listed on Exhibit "A," all of whom he alleges without specificity or factual support to be beneficiaries of the PACA trust. (Compl. ¶ 29.)  The PACA claims the Trustee attempts to assert are not property of the Estate, and the Trustee is without standing to assert any claims on behalf of the alleged beneficiaries of the PACA trust.  Moreover, the claims the Trustee seeks to assert are barred by this Court's PACA Order, which established procedures for all claims entitled to the statutory trust imposed under PACA, and by the subsequently entered final orders and stipulations adjudicating all PACA claims asserted in the Debtors' bankruptcy. Finally, even assuming *arguendo* the Trustee could demonstrate standing, the Complaint omits key factual allegations that are necessary to state the claims asserted.  GT respectfully submit that the Complaint should be dismissed in its entirety.

---

[1] The Trustee asserts these claims are core pursuant to 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(H) and 157(b)(2)(O). See Compl. at ¶ 11.  Of note, 28 U.S.C. § 157(b)(2)(E) (related to orders to turn over property of the estate) and 11 U.S.C. § 157(b)(2)(H) (related to proceeding to determine, avoid or recover fraudulent transfers) are wholly inapplicable as the Trustee does not assert any such causes of action against GT in the Complaint. Moreover, as GT challenges the Trustee's standing to raise any of the causes of action asserted pursuant to PACA in this Motion, GT believes a response to the Trustee's core designation is premature at this time. To the extent Fed.R.Bankr.P. 7012(b) requires such a response in this Motion, GT asserts that the claims in the Complaint are non-core and does not consent to the entry of final orders and judgments.

## II.
## PROCEDURAL HISTORY

**A.    Debtors' Bankruptcy Filing.**

1.      On October 28, 2013 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      In conjunction with various first day motions filed on the Petition Date, Debtors also filed their *Motion for Entry of Orders Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing Debtors to Incur Post-Petition Secured Indebtedness, (II) Granting Liens and Superpriority Claims to the DIP Lenders, (III) Authorizing Use of Cash Collateral and Providing Adequate Protection, (IV) Modifying the Automatic Stay and (V) Scheduling Final Hearing* [Docket No. 25] [2] (the "DIP Motion"), through which Debtors requested, among other relief, authority to enter into a post-petition financing agreement to obtain up to approximately $119 million (the "DIP Facility") to facilitate these Bankruptcy Cases.

3.      As fully disclosed in the DIP Motion, among the material terms to the DIP Facility transaction were certain "Sale Process Covenants," which required Debtors to conduct and complete a sale process of all or substantially all of their assets within a compressed timeframe.  See id. ¶ 16.  After multiple hearings, which included live testimony and necessitated additional briefing, this Court ultimately entered its final order approving the DIP Facility [Docket Nos. 79, 227, 297], pursuant to which Debtors were required to meet a number of milestones, including but not limited to, a hearing to approve the sale of all or substantially all of their assets within approximately 90 days from the Petition Date.

4.      On November 4, 2013, the Debtor filed their *Application of the Debtors For Entry of an Order Authorizing the Retention and Employment of the Law Firm of Greenberg Traurig, LLP as Counsel For the Debtors Nunc Pro Tunc as of the Petition Date* (the "Employment

---

[2] References to "Docket No. __" are to the docket in the Debtors' jointly administered bankruptcy cases under Case No. 5:13-bk-73597.

Application") [Docket No. 119]. In the Employment Application, GT disclosed all payments made on behalf of Debtors to GT prior to the Petition Date [*Id.* at ¶ 19]. The Employment Application was approved by the Order *Authorizing the Retention and Employment of the Law Firm of Greenberg Traurig, LLP as Counsel For the Debtors Nunc Pro Tunc as of the Petition Date* [Docket No. 253].

**B.**   **The PACA Procedures Order and Sale Order.**

5.   On November 4, 2013, Debtors filed the *Motion for an Order: (I) Approving PACA Procedures, Including a PACA Claims Bar Date; (II) Authorizing the Debtors to Pay Allowed PACA Claims; and (III) Granting Related Relief* [Docket No. 125] (the "PACA Procedures Motion"). On November 27, 2013, this Court entered an Order (the "PACA Order") granting the PACA Procedures Motion [Docket No. 255]. The PACA Order established procedures to (i) establish a deadline for PACA Claimants[3] to assert claims arising under PACA against the PACA Trust Assets[4]; (ii) determine the amount of valid PACA Claims; and (iii) authorize the payment of Allowed PACA Claims from the Estate. No party appealed the PACA Procedures Order following its entry.

6.   Pursuant to the PACA Order, all PACA proofs of claim were required to be filed with the Court on or before December 23, 2013 (the "PACA Claims Bar Date"). The PACA Order provides that any person or entity that fails to file a PACA proof of claim on or before the PACA Claims Bar Date,

> **SHALL BE FOREVER BARRED** from asserting a claim under the PACA related to the Debtors, whether in this Court or any other forum, against the Debtors, the PACA Trust Assets, other PACA Claimants or third parties, including but not limited to the Debtors' officers and directors, lenders or purchasers of the Debtors' assets.

[PACA Order, Docket No. 255, ¶ 8] (emphasis in original).

---

[3] Defined in the PACA Order as "Debtors' suppliers of perishable agricultural commodities with potential pre-petition claims under PACA."

[4] Defined in the PACA Order as "certain of the Debtors' assets which are subject to the trust provisions of PACA."

4

7.     The PACA Order also provides a procedure for the Debtors or any party-in-interest to object to any PACA Claims and for the adjudication of those objections by this Court. [*Id*. ¶¶ 10-18].  Allowed PACA Claims are to be "handled exclusively in accordance with the procedures set forth in [the] PACA Order for paying Allowed PACA Claims." [*Id*. ¶ 22].  The PACA Order "remains in effect and binding on all interested parties, including but not limited to the PACA Claimants, regardless of any dismissal or conversion of the cases of Debtors." [*Id*. ¶ 23].  In addition, the PACA Order provides for the filing of periodic reports by Debtors (the "PACA Distribution Reports") listing the amount of each timely filed PACA proof of claim and whether such claim is Disputed, Invalid or Allowed (each as defined in the PACA Procedures Order).

8.     With respect to claims PACA Claimants may seek to assert against non-debtors, including GT, the PACA Order provides:

> No adversary proceeding or other litigation shall be commenced or pursued by any PACA Claimant against any non-debtors on the basis of any PACA or related claims until (a) the PACA Claimant's claim has been deemed an Allowed PACA Claim under this Order and the PACA Claimant hold[s] no Disputed Claim, and (b) a deficiency in payment of that PACA Claimant's Allowed PACA Claim can be established with reasonable certainty; provided, however, that nothing herein shall prevent any party from seeking from this Court relief from this provision in the event of an imminent statute of limitations deadline, which has not been tolled or otherwise stayed.

[*Id*. ¶ 24]. Thus, the PACA Order precludes the assertion of any claims against GT by or on behalf of any PACA Claimant until such time as the PACA Claimant's claim has been deemed allowed, the PACA Claimant holds no Disputed Claim, *and* a deficiency in payment can be established with reasonable certainty.  The PACA Order also precludes any party that either did not properly file a PACA Claim or whose PACA Claim became an Invalid Claim by stipulation or order, like the vast majority of the parties listed on Exhibit "A" to the Complaint, from commencing any action at all [*Id.*at ¶¶ 8 and 24].

9.     As contemplated in the DIP Motion, with approval of the Court, the Debtors conducted a sale of substantially all of Debtors' assets by way of an auction.

10.     On February 12, 2014, the Court approved a sale of substantially all of the Debtors' assets to Sager Creek through the entry of the *Order (A) Authorizing And Approving The Sale of Substantially All of the Assets of Debtor Allen Inc. Free And Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing And Approving the Asset Purchase Agreement; (C) Approving the Assumption of And Assignment of Certain of the Debtor's Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* (the "Sale Order") [Docket No. 644].   The Sale Order also provided for the payment of: (i) funding for the Carve Out (as defined in the Sale Order); (ii) bid protection payments for the stalking horse bidder; (iii) payment to Lazard Middle Market, LLC (for the Lazard Fee as defined in the Sale Order); and (iv) payment to the DIP Lenders in respect of the DIP Obligations (as such terms are defined in the Sale Order).

11.     Pursuant to the Sale Order and the Asset Purchase Agreement (as amended approved therein) disputed PACA claims would be paid as they became Allowed either through stipulation, or a final and non-appealable order [*Id.* at ¶ 63(i)].

**B.      The Distribution Reports And PACA Claims Resolutions.**

12.     As contemplated by the PACA Order, Debtors filed PACA Distribution Reports with the Court.   According to the PACA Distribution Reports filed by the Debtors, fifty-two (52) creditors filed PACA Proofs of Claim. [*See* PACA Distribution Reports, Docket Nos. 581-1, 675-1, 852-1 and 978-1]   As of the filing of the Debtors' Fourth PACA Distribution Report on June 8, 2014, only five (5) Disputed PACA Claims remained. [Fourth PACA Distribution Report, Docket No. 978-1.]   The other forty-seven (47) claims were disposed of by stipulation and either paid, paid in part and disallowed in part, or disallowed in their entirety.

13.     Of the five (5) Disputed PACA Claims remaining on June 8, 2014, the PACA claim of Great American Appetizers, Inc. has been tried before the Court and the matter is currently *sub judice*, the PACA claim of Central Produce Sales, Inc. has been disallowed in its entirety and is now an Invalid Claim [Central Produce Sales, Inc., Docket No. 1094]**,** and the

6

Court has ruled on Debtors' objections to the PACA claims of D & E Farms, Inc., H.C. Schmieding Produce Co. and Hartung Brothers by the opinions and orders set forth at Docket Nos. 1045, 1068 and 1151 and are currently the subject of timely-filed appeals.

14.     Based on the Court's rulings, and Notices of Amended Claim Calculation filed by each of the creditors, D & E Farms, Inc. has a PACA Claim of approximately $2,286,956.06, H.C. Schmieding Produce Co. has a PACA Claim of approximately $1,411,547.10 and Hartung Brothers has a PACA Claim of approximately $9,111,583.88 (all subject to a pending appeal), for a total of $12,810,807.04 [Docket Nos. 1049, 1077 and 1159].  Including the unresolved claim of Great American Appetizers, Inc., the total of the remaining potential Allowed PACA Claims that remain unsatisfied is approximately $12,908,580.28.[5]  Pursuant to the PACA Order, all other potential but unasserted PACA Claims are forever barred.  According to the testimony and records of the PACA Escrow Agent,[6] the amount of $11,800,593.12 is presently available in cash or readily available funds to be paid on those Disputed PACA Claims [Docket No. 1250, Exs. A and B]; leaving a potential deficiency of approximately $1,107,987.16 for these four (4) PACA Claimants.  Thus, all Allowed PACA Claims have either been paid in full or, with respect to the four (4) remaining PACA Claims that are either pending or on appeal, sufficient funds exist such that all Allowed PACA Claims can be paid, any deficiency based on interest and attorneys' fees asserted by such PACA Claimants for the period after the PACA Bar Date.  If the Debtors are successful in the aforementioned appeals, in whole or in part, this potential deficiency may never come into existence.

15.     In light of certain disputes concerning the application of the Sale Order [Docket No. 644], D & E Farms, Inc., H.C. Schmieding Produce Co. and Hartung Brothers filed a Motion for Relief from the Sale Order which is presently pending before the Court. [Docket No. 1196.] If the Motion for Relief is granted, sufficient funds may be made available such that, even if the

---

[5] This amount does not include interest or attorneys' fees that could be recoverable by Great American Appetizers, Inc. should its claim be allowed.

[6] The PACA Escrow Agent is also attorney of record for the Trustee in this case.

aforementioned claims are affirmed on appeal, all Allowed PACA Claims will have been or will be paid from the Estate or funds set aside for that purpose, and no PACA Creditor with an Allowed PACA Claim will suffer any payment deficiency.

### III.
### THE TRUSTEE'S ADVERSARY COMPLAINT

Despite (i) the terms of the PACA Order; (ii) the subsequent proceedings before this Court that resulted in the payment or disallowance by stipulation or order of all PACA Claims other than those of D & E Farms, Inc., Great American Appetizers, Inc., H.C. Schmieding Produce Co., and Hartung Brothers; (iii) the Court's Order sustaining the Debtors' objection to the claim of Central Produce Co.; (iv) the Court's Orders overruling the Debtors' objections to the claims of D & E Farms, Inc., H.C. Schmieding Produce Co. and Hartung Brothers; (v) the Debtors' pending appeal from the Court's Orders overruling their objections to the claims of D & E Farms, Inc., H.C. Schmieding Produce Co. and Hartung Brothers; and (vi) the existence of at least $11,800,593.12 in cash or immediately available funds in the hands of the PACA Escrow Agent to pay the remaining unpaid PACA Claims, the Trustee has filed an adversary complaint purporting to assert claims to "PACA Trust Assets" on behalf of all alleged Produce Suppliers to the Debtors, including suppliers who failed to file any proof of claim in the Debtors' bankruptcy proceedings, suppliers who have filed proofs of claim as mere unsecured creditors not covered by the PACA trust, suppliers who have entered into stipulations disallowing their PACA Claims or have had their PACA Claims disallowed by the Court and suppliers whose Allowed PACA Claims have been or will be paid from the Estate or by the PACA Escrow Agent.  The Trustee does so without any factual or legal support for the existence of such claims or his standing to pursue those claims, including any allegations that the funds received by GT prior to the Petition Date were paid after the alleged claims arose.

A.     **Facts Alleged By The Trustee.**

In resolving a Rule 12(b)(6)[7] motion to dismiss, the Court accepts as true the Trustee's factual allegations in the Complaint. *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). However, the Court "is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Trustee alleges the following facts in the Complaint:

The Debtors filed their petitions in bankruptcy on October 28, 2013 (the "Petition Date"), and the Trustee is now the Chapter 7 Trustee for the Debtors. Prior to the Petition Date, ninety-four (94) different entities listed on Exhibit "A" to the Complaint (hereinafter, the "Produce Suppliers") sold to the Debtors, and the Debtors received, certain wholesale quantities of perishable agricultural commodities (hereinafter, "Produce") in interstate commerce while Veg Liquidation, Inc. was operating under a valid United States Department of Agriculture issued PACA license. In the aggregate, the invoices for all of those sales totaled $36,585,737.03. By and through their participation in the Debtors' bankruptcy proceeding, certain of the Produce Suppliers received payments in full or partial satisfaction of their claims. After application of those payments, the Debtors currently owe no less than $24,850,743.05, plus interest and costs, including reasonable attorneys' fees, to the Produce Suppliers.

The Debtors accepted an unspecified number of loads of Produce from the Produce Suppliers and received individual invoices for unspecified shipments comprising in the aggregate the total amounts shown for each Produce Supplier on Exhibit "A."[8] The Debtors and the Produce Suppliers entered into various contracts for the supply of Produce, and the Produce Suppliers each delivered goods to the Debtors which satisfied the conditions of the contracts. The Debtors failed to pay invoices from each Produce

---

[7] For purposes of this adversary proceeding, Fed. R. Bankr. P. 7012(b) incorporates Fed. R. Civ. P. 12(b)(6).

[8] The Wisconsin Department of Agriculture is listed on Exhibit "A" as a Produce Supplier with a net amount outstanding of $6,120,689.28. The Court may take judicial notice that the Department is not a Produce Supplier. (*See* P.O.C. No. 6.)

Supplier comprising, in the aggregate, the amounts shown on Exhibit "A" within the applicable payment period according to the terms that were in effect at the time of each transaction, despite demand therefor by the Produce Suppliers.

The Debtors were in possession, custody and control of all assets derived from their sale of perishable agricultural commodities and failed to deliver to the Produce Suppliers sufficient funds from those assets to pay for the shipments of Produce reflected, in the aggregate, on Exhibit "A". The Debtors failed to preserve sufficient amounts from those assets to fully satisfy the Produce Suppliers' unpaid claims shown on Exhibit "A".

GT served as counsel to the Debtors for a period of time immediately prior to the Petition Date. GT was the recipient of certain payments from the Debtors from March 21, 2013 to October 24, 2013 assets of the Debtors totaling $1,419,989.43 for legal services. The Produce Suppliers have incurred damages as a result of the payments to GT in the aggregate amount of $1,419,989.43, plus interest and attorneys' fees.

**B.**      **Facts Gleaned From The Record In The Debtors' Bankruptcy Case.**

In addition to the allegations contained in the Complaint, "the Court 'may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record.'" *Allred v. Hauser (In re Jundt)*, 2014 WL 2742868 at *1 (Bankr. D.S.D. June 17, 2014) (quoting *McAdams*, 584 F.3d at 1113). Thus, this Court may consider those facts demonstrated by the record in the Debtors' attendant bankruptcy case. *See id.* at *1.

Although the Trustee lists ninety-four (94) alleged Produce Suppliers on Exhibit "A" to the Complaint, only fifty-two (52) of the Produce Suppliers filed PACA Proofs of Claim in the Debtors' bankruptcy [*See* PACA Distribution Reports, Docket Nos. 581-1, 675-1, 852-1 and 978-1.] Of those fifty-two (52) Produce Suppliers, twenty-six (26) entered into stipulations disallowing their PACA Claims in their entirety, and nineteen (19) entered into stipulations paying all or part of their PACA Claim and treating any remainder as an Invalid PACA Claim [Docket No. 1250, Ex B; *see also, e.g.*, Docket Nos. 556-62, 564-78, and 591-602]. Three (3) of

the Produce Suppliers had their claims disallowed by the Court [Docket Nos. 853, 868 and 1094]. As of the date the Trustee filed his Complaint, only four (4) PACA Claims have not been resolved by stipulation or a final non-appealable Order: D & E Farms, Inc., Great American Appetizers, Inc., H.C. Schmieding Produce Co., and Hartung Brothers. Pursuant to the PACA Order and the Sale Order, the PACA Escrow Agent presently holds or has immediately available funds totaling at least $11,800,593.12 to be applied to the payment of those four (4) unresolved claims.

Of the ninety-four (94) alleged Produce Suppliers listed on Exhibit "A" to the Complaint, forty-two (42) failed to file a PACA Proof of Claim pursuant to the PACA Order, although some may have filed general proofs of claim that did not assert PACA trust rights. As a consequence, their PACA Claims are forever barred [PACA Order, Docket No. 255, ¶ 8].

## C.      Facts NOT Alleged by the Trustee.

Notably, the Trustee has not alleged any of the following facts, among others not listed here: (1) the dates, amounts and payment terms of each invoice which comprise the aggregate amounts the Trustee seeks to recover as listed on Exhibit "A", delivered by each alleged Produce Supplier to the Debtors; (2) the date of delivery of each shipment of Produce by each Produce Supplier for which the Trustee seeks to recover; (3) the type of goods delivered alleged to be Produce; and (4) compliance by each of the Produce Suppliers listed on Exhibit "A" with the PACA statutory requirements pursuant to 7 U.S.C. § 499e(c)(2)-(4) (including but not limited to the requirement of notice of intent to preserve the trust under PACA) to avail themselves of the benefits of the trust established under PACA with respect to each of the invoices for which the Trustee seeks recovery.

## IV.
## APPLICABLE STANDARD

Although the Court accepts as true the factual allegations of the Complaint, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Servs. of Am. v. Am. State*

*Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).  When considering a Rule 12(b)(6) motion,

> "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" . . . The plausibility of a complaint turns on whether the facts alleged allow [the Court] to "draw the reasonable inference that the defendant is liable [as] alleged."

*Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When viewed under the applicable standard, the Trustee's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## V.
## ARGUMENT

**A.**     **The Trustee Lacks Standing to Assert Any Claims Against GT Based on PACA or the PACA Trust.**

In the Complaint, the Trustee attempts to assert claims to enforce, and purportedly recover assets constituting, the floating trust created in favor of certain suppliers of produce under PACA and, more specifically, those rights created by 7 U.S.C. § 499e(c)(2). *See generally Tom Lange Co. v. Lombardo Fruit and Produce Co. (In re Lombardo Fruit and Produce Co.)*, 12 F.3d 806, 808-09 (8th Cir. 1993) (*Lombardo II*); *Six L's Packing Co. v. West Des Moines State Bank*, 967 F.2d 256, 257 n.7 (8th Cir. 1992); *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780-81 (8th Cir. 1991). The Trustee casts his claims under the alternative headings of interference with receipt of trust assets, conversion and unlawful retention of PACA trust assets, and unjust enrichment. However, the essence of every claim is that the Trustee seeks the return of "PACA Trust Assets" or for a money judgment for damages resulting to the alleged Produce Suppliers for monies paid to GT for legal services in the amount of $1,419,989.43 to create a fund for the benefit of a particular group of creditors described as the Debtors' Produce Suppliers. [Compl. ¶ 29].  The Trustee is without standing to assert any rights to "PACA Trust Assets" of PACA trust beneficiaries related to the dissipation of PACA Trust Assets, and his claims must be dismissed.

12

The Trustee's PACA claims are based upon the contention that GT received assets from the Debtors prior to the Petition Date that were impressed with the PACA trust for the benefit of those alleged Produce Suppliers. [*See* Complaint, ¶¶ 29, 30, 32-39, 41, 49-55, 57, 59-62]

As a threshold matter, the Trustee must have standing to assert the claims alleged in the Complaint, *see generally In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222 (8th Cir. 1987), *cert. denied*, 484 U.S. 848 (1987), and his standing must arise from the Bankruptcy Code under which he is appointed. The Trustee's Complaint fails to identify any provision of the Bankruptcy Code relied upon by him as authority to assert the PACA statutory trust claims. Notably, the Trustee does not cite any provision under the Bankruptcy Code that authorizes him to pursue the claims in the Complaint or seek recovery of monies as a result of those alleged claims. Moreover, there is no authority for the Trustee to assert third-party claims belonging to a specific class of the Debtors' creditors. Further, § 704 of the Bankruptcy Code, which outlines the duties of the Trustee, "requires the trustee to 'collect and reduce to money the *property of the estate* for which the trustee serves.'" *In re Ozark Restaurant Equip. Co.*, 816 F.2d at 1224 (quoting 11 U.S.C. § 704(1)) (emphasis in original). "Property of the estate" is defined as "'all legal or equitable interests *of the debtor* in property as of the commencement of the case.'" *Id.* (quoting 11 U.S.C. § 541(a)(1)) (emphasis added). It is well established that PACA trust assets are not property of the estate. *See C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 487 (2d Cir. 2001); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997); *In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996); and *In re W.L. Bradley Co.*, 75 B.R. 505, 513 (Bankr. E.D. Pa. 1987).

The Trustee's purported PACA claims are precluded by the Supreme Court's holding in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), as applied by the Eighth Circuit in *In re Ozark Restaurant Equipment Co.*, supra. In *In re Ozark Restaurant*, the Eighth Circuit held that a trustee has no standing to bring an alter ego action against third parties on behalf of the debtor corporation's creditors. The court also held that, although property of the

estate includes causes of action belonging to the debtor, property of the estate does not include obligations or liabilities running from third parties to the corporate creditors personally, rather than to the corporation. 816 F.2d at 1224-26 ("[B]ecause the nature of the alter ego theory of piercing the corporate veil makes it one personal to the corporate creditors rather than the corporation itself, it is axiomatic that the claim does not become property of the estate under Section 541(a)(1), nor is it enforceable by the trustee under Section 704(1).").

The Supreme Court's decision in *Caplin* is directly on point. There, the bankruptcy trustee sought to assert claims on behalf of the debtor's debenture holders against the third-party indenture trustee. 406 U.S. at 434. The Supreme Court concluded that the trustee did not have standing to bring creditor claims against third parties for at least three reasons. First, the statutory scheme did not suggest "that the trustee should 'assume the responsibility of suing third parties on behalf of debenture holders.'"  *In re Ozark Restaurant Equip. Co.*, 816 F.2d at 1227 (quoting *Caplin*, 406 U.S. at 428).  Second, the debtor did not have a claim against the indenture trustee, and "at the most, the trustee's claims of misconduct involved a situation where the corporation and the indenture trustee were *in pari delicto*." *Id.* (citing *Caplin*, 406 U.S. at 430).  Finally, the Supreme Court raised concerns that "'a suit by [the trustee] on behalf of debenture holders may be inconsistent with any independent actions that they might bring themselves.'" *Id.* (quoting *Caplin*, 406 U.S. at 431-32).  The Court also noted that conflicts could arise as to who might be bound by a settlement of the claims by the trustee. *Id.* (citing *Caplin*, 406 U.S. at 432).  The Eighth Circuit echoed these concerns with respect to the trustee's alter ego action in *In re Ozark Restaurant*, noting that "the trustee is not the real party in interest, and thus does not have the power to bind the creditors to any judgment reached in the litigation." *Id.* at 1230.[9]

---

[9] The Eighth Circuit's concerns regarding the impact on the claims of the real parties in interest of letting a trustee pursue those claims—either to final adjudication or a settlement—is magnified in this case, because the Trustee has retained counsel under a fee arrangement providing for a thirty-five percent (35%) contingency fee payable from all recoveries. (Docket No. 1050.) Thus, a PACA creditor who could file his own PACA claim when ripe and, if successful, recover his attorneys' fees in addition to his claim, will instead see his recovery reduced by at least thirty-five percent (35%).

*Caplin* was decided under the old Bankruptcy Act, and the Supreme Court suggested that Congress could adopt laws empowering trustees to bring third-party claims such as those against the indenture trustees. *Caplin*, 406 U.S. at 434-35.   However, when the Bankruptcy Code was enacted in 1978, Congress made no changes that would authorize the trustee to prosecute suits against third parties on behalf of the estate's creditors.  *In re Ozark Restaurant Equip. Co.*, 816 F.2d at 1227-28.  As a result, *Caplin* remains good law and was followed by the Eighth Circuit in *In re Ozark Restaurant* to find that "there is nothing in Section 544 or the liquidation framework of the Code authorizing a Chapter 7 trustee to collect money not owed to the estate." *Id.* at 1228.

It is clear from the Trustee's own allegations that he is attempting to collect monies allegedly owed, not to the Estate, but to the alleged Produce Suppliers.  This is a result of the fact that the statutory trust rights which he seeks to assert only arise for the benefit of certain suppliers of perishable agricultural commodities and not for the benefit of all general creditors of a commissioned merchant, dealer or broker. 7 U.S.C. § 499e.  It is well settled law that assets forming the PACA trust are excluded from the bankruptcy estate. *See Ruby Robinson Co., supra; C.H. Robinson Co., supra; and Sunkist Growers, Inc., supra*. Thus, by alleging that the assets he seeks to recover are PACA trust assets held for the benefit of a limited class of creditors, the Trustee has alleged the very facts that deprive him of standing and "plead himself out of court." *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (noting that "a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery."), citing *McCready v. EBay, Inc.* 453 F.3d 882, 888 (7th Cir. 1006)..

The bankruptcy court's decision in *Kurtzman v. CIT Business Credit Corp. (In re N. Merberg & Sons, Inc.)*, 166 B.R. 567 (Bankr. S.D.N.Y. 1994) is instructive.  There, the trustee sought to assert claims under PACA to invalidate a security agreement between the debtor and a secured creditor based on 7 U.S.C. § 499e(c). *Kurtzman*, 166 B.R. at 569.  The bankruptcy court granted the creditor's Rule 12(b)(6) motion to dismiss on the basis that the trustee's PACA claims were legally insufficient.  The court noted that 7 U.S.C. § 499e(c)(2) "gives a special and

limited class of creditors a statutory priority." *Id*. at 570. Because only members of a limited class of creditors are beneficiaries of the PACA trust and the trust assets were not property of the estate, the trustee could not bring claims under PACA on behalf of the bankruptcy estate. *Id.* at 570-71 (observing that PACA protects a limited class of creditors and does not confer rights on any other creditors, or on trustees in bankruptcy).

Also instructive, and addressing trustee claims directly analogous to the trustee's claims here, is the district court's decision in *Still v. Congress Financial Corp. (In re Southwest Equipment Rental, Inc.)*, 102 B.R. 132 (E.D. Tenn. 1989). In *Still*, the bankruptcy trustee filed an action against a creditor of the debtor seeking a remedy under the Fair Labor Standards Act ("FLSA") minimum wage and overtime provisions to recover the amount of wages owed to the debtor's drivers and employees. *Id*. at 133. Like some of the Produce Suppliers here, the drivers and employees had filed proofs of claim in the debtor's bankruptcy proceeding. On a Rule 12(b)(6) motion to dismiss, and based upon the holdings of *Caplin* and *In re Ozark Restaurant Equip. Co.*, the district court found that the trustee was without standing and dismissed the complaint. The court noted that "the recovery of unpaid wages [under the FLSA] is a remedy reserved for the employees of the debtor . . . . There is no authority supporting the claim that a section 216(b) claim can be considered a cause of action belonging to the debtor." *Id*. at 136 (citations omitted). As a consequence, the court concluded, "[a]ctions such as the instant one seeking recovery of a debt owed a specific class of creditors of the estate is not within the scope of section 541, where the statute contains 'key limiting language . . . . -- property of the estate comprises only 'legal and equitable interests *of the debtor*.'" *Id*. (quoting *In re Ozark Restaurant Equip. Co*., 816 F.2d at 1224) (emphasis in original). Again, "the Bankruptcy Code excludes PACA trust assets from the PACA trustee's bankruptcy estate." *C.H. Robinson Co*., 239 F.3d at 487.

16

The court in *Still* distinguished between causes of action that are general to the estate, and can be pursued by the trustee in bankruptcy, and those that are personal to the creditor, or a class of creditors, and may not be pursued by the trustee:

> Where the law recognizes a cause of action personal to a creditor, rather than one general to the estate, such a claim is not an asset of the bankrupt estate *under section 541(a)(1)*. . . . "A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." . . . Here, the trustee seeks to recover on behalf of a specific class of creditors, a class consisting of those employees of Southwest who were not paid wages for two pay periods immediately prior to the filing of Southwest's bankruptcy petition. Numerous employees of Southwest have filed claims with the trustee seeking payment of their unpaid wages, and the trustee in turn filed this suit seeking a recovery of that sum from Congress. ***However, it is clear, despite the fact that the trustee filed this suit on behalf of the estate, that the real party in interest is the specific class of creditors consisting of the unpaid employees of the debtor***. "If there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue."

*Still*, 102 B.R. at 136-37 (emphasis added) (citations omitted).

Just as the FLSA created a right of action unique to the unpaid employees of the debtor in *Still*, PACA creates a right of action unique to qualified suppliers of perishable agricultural commodities. 7 U.S.C. § 499e(c)(2). Only those suppliers of perishable agricultural commodities who preserved their trust rights by providing the Debtors "proper and timely notice of its intent to make a claim under the PACA trust" are entitled to PACA trust protection. *See Allens, Inc. v. H.C. Schmieding Produce Co. (In re Veg Liquidation, Inc.)*, 516 B.R. 555, 557 (Bankr. W.D. Ark. 2014). Because the PACA trust rights which the Trustee seeks to assert on behalf of the alleged Produce Suppliers are specifically limited by PACA and case law to those suppliers who meet the qualifications set forth in 7 U.S.C. § 499e(c)(2), including proper and timely notice of their intent to make a claim under the PACA trust, the claims are not property of the Estate and they cannot be pursued by the Trustee. *See also Dairy Fresh Foods, Inc. v. Ramette (In re Country ClubMarket, Inc.)*, 175 B.R. 1011, 1016 (Bankr. D. Minn. 1994) ("[E]xcept as explicitly provided by the Bankruptcy Code (See 11 U.S.C. § 544), the trustee stands in the shoes of the debtor, not creditors, and can only assume control of the debtor's estate.").

105006-001/2549294_3.DOCX

Moreover, the Trustee's PACA claims are barred because the Complaint seeks to recover alleged PACA Trust Assets[10] transferred by the Debtors prior to the Petition Date on the basis that the Debtor was a trustee of the PACA Trust. (*See* Compl. ¶ 4.)  It is well established that property held by a debtor as trustee only is not property of the bankruptcy estate. *Cowden v. Ramsay (In re Cowden)*, 154 B.R. 531, 533-34 (Bankr. E.D. Ark. 1993). "The United States Supreme Court has stated that Congress has plainly excluded from the estate the property of others held by the debtor in trust at the time of the filing of the petition." *Torrez v. Torrez (In re Torrez)*, 63 B.R. 751, 753 (B.A.P. 9th Cir. 1986) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983)).  As of the Petition Date, the Debtors held neither legal nor equitable title to the alleged PACA Trust Assets that the Trustee now seeks to recover from GT. The Trustee's claims to PACA trust assets beneficially owned by qualified produce suppliers also fail because the Trustee is only authorized to pursue the recovery of property of the Estate, and not the recovery of property to which the Debtors once held only bare legal title for the benefit of qualified PACA creditors. The Trustee's purported PACA trust claims should be dismissed.

**B.**     **Even if the Trustee had Standing, the Complaint Fails to State a PACA Claim.**

Even assuming *arguendo* that the Trustee has standing, he fails to state a claim upon which relief can be granted under PACA. As recognized by this Court in this proceeding, only those creditors who preserve their PACA trust rights in compliance with the statute and the regulations promulgated thereunder are entitled to avail themselves of the trust benefits created by 7 U.S.C. § 499e. *See* Order, Docket No. 1094; s*ee also Allens, Inc. v. D & E Farms, Inc. (In re Veg Liquidation, Inc.)*, 516 B.R. 545 (Bankr. W.D. Ark. 2014).  Moreover, this Court's PACA Order further required qualified PACA Creditors to file a timely PACA Proof of Claim in the attendant bankruptcy proceeding in order to qualify for PACA Trust protection. [PACA Order, Docket No. 255.]  The Trustee fails to allege facts establishing that many of the creditors listed

---

[10] Assets impressed with the PACA trust are defined by 7 U.S.C. §499e(c)(2) as all "[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products[.]" 7 U.S.C. § 499e(c)(2).

on Exhibit "A" to the Complaint have preserved their PACA trust rights. In the absence of such allegations, the Complaint fails to state a claim upon which relief can be granted with respect to any of the creditors listed on Exhibit "A".

The Trustee's Complaint seeks to pursue purported PACA trust claims on behalf of ninety-four (94) creditors who are alleged to be produce suppliers. With respect to each and every one of those produce suppliers, the Complaint fails to allege the date that the produce was delivered, the terms of the supplier's contract with the Debtors and the Debtors' failure to timely pay the invoice in accordance with those terms.  But, the trust under PACA arises in favor of the unpaid seller and supplier only upon the delivery of produce in each transaction, *see Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F. 3d 1, 8 (1st Cir. 1999), and each claim accrues at the time the PACA trustee fails to timely pay an invoice for produce, *see Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005). The Trustee has failed to allege facts establishing the creation of a trust for each delivery of produce by each of the creditors he seeks to represent, and he has failed to allege facts establishing when, and with respect to what delivery, their claims arose. Moreover, only creditors who preserved their trust rights by giving the Debtors "proper and timely notice of [their] intent to make a claim under the PACA trust" are entitled to PACA trust protection. *Allens, Inc.*, 516 B.R. at 557; 7 U.S.C. § 499e(c)(3) and (4). Yet, the Trustee has not alleged that any of the creditors listed on Exhibit "A" to the Complaint gave the Debtors the required notice.  These omissions are fatal to the Trustee's purported PACA claims.  The Eighth Circuit has recognized that a produce supplier who fails to adhere strictly to the PACA statute loses its ability to enforce trust benefits. *Goldman Fruit and Produce Co. v. Lombardo Fruit and Produce Co. (In re Lombardo Fruit and Produce Co.)*, 12 F.3d 110, 112 (8th Cir. 1993) (Lombardo I) (disqualified produce creditor may not enjoin a secured creditor from exercising its priority interest in collateralized accounts receivable).

The Trustee's pleading omissions alone are adequate reason to dismiss his PACA claims, but the record further establishes that most of the ninety-four (94) creditors the Trustee seeks to

represent are not qualified PACA trust beneficiaries, or, if they are, their valid PACA trust claims have been paid in the bankruptcy proceeding. For example, twenty-six (26) of the creditors entered into stipulations disallowing their PACA Claims in their entirety, yet the Trustee now seeks to recover the amount of their claims from GT under the theory that they are beneficiaries of the PACA trust. As one example, the claim of Thomas M. and Debra K. Beauchamp was disallowed by stipulation because the Beauchamps did not seek PACA trust protection and were ineligible for PACA protection based on terms in excess of thirty (30) days. [*See* Stipulation, Docket No. 576.] Nevertheless, the Trustee now asserts a $250,388.02 PACA trust claim against GT on behalf of the Beauchamps. [Compl., Ex. "A" at p.1.][11] Similarly, nineteen (19) of the creditors who filed PACA Proofs of Claim entered into stipulations paying all or part of their PACA Claim and treating any remainder as an Invalid PACA Claim. [Docket No. 1250, Ex B; *see also, e.g.*, Docket Nos. 556-62, 564-78, and 591-602.] Clearly, a creditor who has stipulated to the partial payment and disallowance of a portion of its asserted PACA claim is not entitled to subsequently assert a claim for the disallowed portion—and neither is the Trustee, as the successor to the debtor-in-possession who was a party to those stipulations. *See Armstrong v. Norwest Bank*, 964 F.2d 797, 801 (8th Cir. 1992) ("[I]t is axiomatic that the Trustee is bound by the acts of the debtor-in-possession . . . in entering into the three stipulations. It is equally self-evident that the Trustee is bound by the decisions of the courts regarding the stipulations, even absent his presence at those proceedings").

The Trustee also seeks to pursue PACA Trust claims on behalf of creditors whose claims have been disallowed in their entirety by orders of this Court. For example, the claims of D&T Farms, Inc. ($86,505.96), Dieter Isaacson ($68,113.76) and Central Produce Sales, Inc. ($128,455.62) have all been disallowed by orders of this Court, yet their claims inexplicably

---

[11] GT could point the Court to twenty-five (25) additional examples like this one, but it is the Trustee's burden to plead facts establishing the existence of his claims, not the GT's burden to demonstrate the facts disproving each of his claims. In any event, the stipulations appear in the Debtors' bankruptcy case, at Docket Nos. 556-62, 564-78, and 591-602, and may be considered by the Court in ruling on the GT's Motion to Dismiss. *See Allred*, 2014 WL 2742868, at *1.

constitute the alleged Produce Suppliers which have PACA claims. The claim of D&T Farms, Inc. was disallowed based on its untimely filing of the required notice of intent [*see* Docket No. 853]; the claim of Dieter Isaacson was disallowed for reasons not stated by the Court in its Order [*see* Docket No. 868]; and the claim of Central Produce Sales, Inc. was disallowed for failure to preserve its PACA trust rights [*see* Docket No. 1094]. The Trustee is bound by the Orders of this Court adjudicating the purported PACA trust claims of these three creditors. *See Armstrong*, 964 F.2d at 801. *See also Flores v. Hagobian*, 2008 WL4184118, at *5-8 (E.D. Cal. Sept. 10, 2008) (holding that the bankruptcy court's prior order finding that the claimant failed to preserve PACA trust rights was res judicata in subsequent action).

Finally, the Trustee seeks to assert claims totaling in the aggregate $11,671,137.50 on behalf of D & E Farms, Inc., Great American Appetizers, Inc., H.C. Schmieding Produce Co., and Hartung Brothers. The PACA Claim of Great American Appetizers, Inc. is under submission to this Court following a trial. The claims of D&E Farms, Inc., H.C. Schmieding Produce Co. and Hartung Brothers have been allowed by this Court and those orders have been appealed by the Debtors. The Trustee asserts these claims despite the fact that the PACA Escrow Agent presently holds cash in escrow, and has funds available under a credit facility, sufficient to pay the full amount of these claims (as asserted in the Complaint) [12] from the PACA trust funds reserved from the sale of the Debtors' assets. It goes without saying that the Trustee cannot state a claim for damages based on these three PACA creditors, where the PACA Escrow Agent indisputably holds sufficient funds in escrow to pay the damages being claimed by the Trustee—and the PACA Escrow Agent is bound by prior Orders of this Court to do so.

**C.     Even if the Trustee had Standing, the PACA Claims are Precluded by the PACA Order.**

The Trustee is bound by the proceedings in the attendant bankruptcy case and the Orders of this Court, including the PACA Order. *Armstrong*, 964 F.2d at 801. Consistent with this

---

[12] Although the Court has held that these three creditors are entitled to interest and attorneys' fees, the amounts of the claims asserted by the Trustee on behalf of these three creditors appear to be based solely on the creditors' original PACA Proofs of Claim.

well-established law, the PACA Order contemplates the possibility that the Debtors' bankruptcy case might by converted and provides, "This Order remains in effect and binding on all interested parties, including but not limited to the PACA Claimants, regardless of any dismissal or conversion of the cases of Debtors." [PACA Order, Docket No. 255, ¶ 23.]

At least two provisions of the PACA Order bar the Trustee from pursing the PACA claims. First, paragraph 8 of the PACA Order provides that any person or entity that fails to timely file a PACA Proof of Claim "**SHALL BE FOREVER BARRED** from asserting a claim under the PACA related to the Debtors, whether in this Court or any other forum, against the Debtors, the PACA Trust Assets, other PACA Claimants or third parties, including but not limited to the Debtors' officers and directors, lenders or purchasers of the Debtors' assets." [PACA Order, Docket No. 255, ¶ 8 (emphasis in original)]. The Trustee cannot undermine the Court's PACA Order by attempting to serve as a conduit for those creditors who failed to file a PACA Proof of Claim to nevertheless assert a claim under PACA against GT.

Second, the Trustee's PACA Claims are precluded by paragraph 24 of the PACA Order, which provides in relevant part:

> No adversary proceeding or other litigation shall be commenced or pursued by any PACA Claimant against any non-debtors on the basis of any PACA or related claims until (a) the PACA Claimant's claim has been deemed an Allowed PACA Claim under this Order and the PACA Claimant hold[s] no Disputed Claim, and (b) a deficiency in payment of that PACA Claimant's Allowed PACA Claim can be established with reasonable certainty.

[*Id*. ¶ 24.] Although the PACA Order bars an adversary proceeding "by any PACA Claimant," it clearly applies to the Trustee's adversary proceeding because he simply seeks to assert the rights of alleged PACA Claimants under the statutory trust provisions of PACA. [*See* Compl. ¶ 29] (Trustee seeks to create a "fund for the common benefit of said Produce Suppliers."). As discussed above, the Trustee is without standing to assert the rights of a particular class of creditors against third parties. But, even if the Trustee could prosecute the PACA claims of the alleged Produce Suppliers, paragraph 24 precludes him from doing so until such time as a deficiency in the payment of PACA Claims from the Estate and the escrow monies established

by the Asset Purchase Agreement and the Sale Order is established.[13] The Trustee's purported PACA claims fail to state a claim upon which relief can be granted because they are barred by paragraph 24 of the PACA Order.

## VI.
## CONCLUSION

In light of the foregoing, the Defendant respectfully requests that this Court require the Trustee to provide a more definite statement or dismiss Counts 1, 2, and 3 of the Complaint in their entirety. Defendant additionally seeks such further and other relief as the Court deems just and proper.

Dated: January 26, 2015          Respectfully submitted,

                                 HARRINGTON, MILLER KIEKLAK,
                                 EICHMANN & BROWN, P.A.


                          By:    _/s/ Lucas T. Regnier_____
                                 LUCAS T. REGNIER, ESQ.
                                 113 East Emma Avenue
                                 Springdale, Arkansas 72764

                                        and

                                 GORDON SILVER
                                 GREG E. GARMAN, ESQ. (Pro Hac Vice)
                                 BRIGID M. HIGGINS, ESQ. (Pro Hac Vice)
                                 3960 Howard Hughes Parkway, Ninth Floor
                                 Las Vegas, Nevada 89169

                                 Attorneys for Greenberg Traurig, LLP

---

[13] The reason for the bar of paragraph 24 is apparent on its face. If the funds held in the Estate or in escrow are sufficient to pay all Allowed PACA Claims, as they were intended to be, then any proceeding or litigation against third parties will be unnecessary. Moreover, any litigation commenced before such time as there are insufficient funds in the Estate (or held in escrow) to pay all Allowed PACA Claims would be premature and duplicative. Simply put, the recovery of a PACA Claimant's claim from GT or any other third party provides no benefit to the Estate, and there is no need for the Trustee to pursue the claims at all—*much less prematurely*.

105006-001/2549294_3.DOCX

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of the foregoing was made to the following by electronic filing through the Federal Judiciary's Case Management/Electronic Case Filing system and by U.S. Mail, properly addressed as follows:

Stephen P. Leara <u>sleara@wallacejordan.com</u>
WALLACE, JORDAN,
RATLIFF & BRANDT, LLC
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Telephone: (205) 870-0555
Fax: (205) 871-7534

R Ray Fulmer, II <u>rrf@lcahlaw.com</u>
LEDBETTER, COGBILL, ARNOLD & HARRISON, L
P.O. Box 185
Fort Smith, AR 72902-0185
(479) 782-7294
Fax : (479) 782-1493

on this 26th day of January 2015.

                                                      ___/s/ Lucas T. Regnier_____
                                                      Lucas T. Regnier